**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**

| | |
|---|---|
| **TANVIR CHAUDHARY and RIZWANA KHAN,**<br><br>**Plaintiffs,**<br><br>**vs.**<br><br>**EQUIFAX INFORMATION SERVICES LLC, EXPERIAN INFORMATION SOLUTIONS, Inc., TRANS UNION LLC, and ALLY FINANCIAL INC.,**<br><br>**Defendants.** | **Civil Action No. 2:26-cv-12642**<br><br>**With Jury Demand Endorsed** |

# COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

Plaintiffs, Tanvir Chaudhary and Rizwana Khan ("Plaintiffs"), by and through counsel, for Plaintiffs' Complaint against Defendants Equifax Information Services LLC, Experian Information Solutions, Inc., Trans Union LLC, and Ally Financial Inc. jointly, severally, and in solido, state as follows:

## I. INTRODUCTION

1. Three of the Defendants, Equifax Information Services LLC, Experian Information Solutions, Inc., and Trans Union LLC are consumer reporting agencies ("CRAs") as defined by 15 U.S.C. § 1681a(f), and the other Defendant, Ally Financial Inc., is a furnisher of consumer information. All Defendants have violated 15 U.S.C. § 1681 *et seq.*, known as the Fair Credit Reporting Act (the "FCRA"). Plaintiffs seek to recover from Defendants actual, statutory, and punitive damages, injunctive relief, legal fees, and expenses.

## II. PARTIES

2. Plaintiffs are natural persons residing in Romulus, Michigan is a “consumer,” as defined by the FCRA, 15 U.S.C. § 1681a(c), and is a victim of repeated false credit reporting.

**Made Defendants herein are**:

3. Upon information and belief, Defendant Equifax Information Services LLC, which may also hereinafter be referred to as “Equifax,” “Defendant,” “Defendants,” “CRA,” “CRA Defendant,” or “CRA Defendants” is a Georgia limited liability company that does substantial business in this judicial district and may be served by delivering a summons to its headquarters, 1550 Peachtree Street, Northwest, Atlanta, Georgia 30309. Equifax is a nationwide consumer reporting agency (“CRA”) as defined by 15 U.S.C. § 1681a(f). Equifax regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purposes of furnishing “consumer reports” as defined by 15 U.S.C. § 1681a(f) to third parties. Equifax disburses such consumer reports to third parties of contract for monetary compensation.

4. Upon information and belief, Experian Information Solutions, Inc., which may also hereinafter be referred to as “Experian”, “Defendant,” “Defendants,” “CRA,” “CRA Defendant,” or “CRA Defendants,”, does business in this judicial district and is an Ohio corporation with its principal place of business in California. Experian is a nationwide CRA as defined by 15 U.S.C. § 1681a(f). Experian regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purposes of furnishing “consumer reports” as defined by 15 U.S.C. § 1681a(f) to third parties. Experian disburses such consumer reports to third parties of contract for monetary compensation.

5. Upon information and belief, Defendant Trans Union LLC, which may also

hereinafter be referred to as “Trans Union”, “Defendant,” “Defendants,” “CRA,” “CRA Defendant,” or “CRA Defendants” is an Illinois limited liability company that does business in this judicial district and may be served by delivering a summons to its headquarters, 555 West Adams Street, Chicago, Illinois 60681. Trans Union is a nationwide CRA as defined by 15 U.S.C. § 1681a(f). Trans Union regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purposes of furnishing “consumer reports” as defined by 15 U.S.C. § 1681a(f) to third parties. Trans Union disburses such consumer reports to third parties of contract for monetary compensation.

6. Upon information and belief, Defendant Ally Financial Inc., which may also hereinafter be referred to as “Ally,” “Defendant,” “Defendants,” “Furnisher Defendant,” or “Furnisher Defendants,” is a company that does substantial business in this judicial district and may be served by delivering a summons to its Legal Department at its headquarters, Ally Detroit Center, 500 Woodward Ave., Detroit, MI 48226. Ally is a “person,” as defined by the FCRA, 15 U.S.C. § 1681a(b), and a furnisher of consumer credit information to consumer reporting agencies.

7. As used herein, “consumer reporting agency,” or “CRA,” means any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports (commonly referred to as “credit reports”) to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports and is an entity in the business of collecting, maintaining and disseminating information regarding the credit-worthiness of individuals. CRAs

specifically include, but are not limited to, Equifax, Experian, and Trans Union.

## III. JURISDICTION AND VENUE

8. Plaintiffs respectfully assert that this Honorable Court has jurisdiction in this case arising under federal law. 28 U.S.C. § 1331, 1334, and 1367 and 15 U.S.C. § 1681(p). Plaintiffs also assert actions under states' laws which may be brought within the supplemental jurisdiction of this Court and Plaintiffs respectfully request that this Honorable Court exercise supplemental jurisdiction over said claims. 28 U.S.C. § 1367.

9. Venue is proper in this District, because Plaintiffs reside in this judicial district, the credit reporting at issue is associated to account numbers assigned to either property or the consumer(s) who are located in this judicial district. CRA Defendant and Furnisher Defendant transact business in this District, and a substantial part of the conduct complained of occurred in this district, and various actions made basis of Plaintiffs' claims against Defendants occurred in the Eastern District of Michigan as further described. 28 U.S.C. § 1391.

10. Venue is proper in this District, because the CRA Defendants and Furnisher Defendant(s) transact business in this District. Furnisher Defendant's headquarters is located in this judicial district, a substantial part of the conduct complained of occurred in this district, and various actions made basis of Plaintiffs' claims against Defendants occurred in this judicial district as further described. 28 U.S.C. § 1391.

11. Venue is further proper in this District, because the CRA Defendants entered into agreements with Furnisher Defendant in this judicial district to receive credit reporting data concerning Plaintiffs. Any and all requests to investigate Plaintiffs' disputes sent from the CRA Defendants as part of Defendants' reinvestigations were submitted to Furnisher Defendant's

headquarters and investigated by Furnisher Defendant using its resources located at or closely connected to this judicial district. Furnisher Defendant managed Plaintiffs' account(s) from this judicial district including communicating amounts owed and conducting numerous communications via phone and letter.

## IV. FACTUAL ALLEGATIONS

12. In or around December 2008, Plaintiff Tanvir secured a Home Equity Line of Credit ("HELOC") loan for Plaintiff's primary residence.

13. In or around October 2012, Plaintiff Tanvir secured a mortgage loan for Plaintiff's primary residence.

14. In or around July 2017, Plaintiff Tanvir secured an auto loan with Ally and Ally assigned account number 673925*** (hereinafter the "Ally loan" or "Ally account" or "Ally tradeline").

15. In or around September 2017, Plaintiffs jointly secured an auto loan with Ally and Ally assigned account number 673926*** (hereinafter the "Ally Joint loan" or "Ally Joint account" or "Ally Joint tradeline").

16. Due to unforeseen circumstances, Plaintiffs needed to file for bankruptcy protection under Chapter 13 of Title 11.

17. On or around January 25, 2019, Plaintiffs filed for bankruptcy protection under Chapter 13 of Title 11.

18. A redacted copy of Plaintiffs' chapter 13 bankruptcy docket report for Plaintiffs' bankruptcy case is attached hereto as Exhibit A.

19. Upon information and belief, Plaintiff Tanvir's HELOC was sold to, transferred to, purchased by, or otherwise acquired by JP Morgan Chase Bank NA "Chase" and was assigned

loan number 465710*** (hereinafter the "Chase HELOC" or "Chase account" or "Chase tradeline").

20. Upon information and belief, Plaintiff Tanvir's mortgage was sold to, transferred to, purchased by, or otherwise acquired by Seterus, Inc. and was assigned loan number 659002*** (hereinafter the "Seterus mortgage" or "Seterus loan" or "Seterus account" or "Seterus tradeline").

21. As part of Plaintiffs' chapter 13 bankruptcy, it was determined that Plaintiff Tanvir was to continue paying on the Chase HELOC, Seterus mortgage, and Ally loan and Plaintiffs were to continue to pay on the Ally Joint loan even after Plaintiffs filed for bankruptcy.

22. The Chapter 13 Plan specifically details that Plaintiff Tanvir was to make the HELOC payments to the Bankruptcy Trustee, and the Trustee would disperse the payments to Chase. *See* Exhibit A.

23. The Chapter 13 Plan specifically details that Plaintiff Tanvir was to make payments to the Seterus mortgage and Ally loan, and Plaintiffs were to make payments to the Ally Joint loan outside the bankruptcy and directly to the lenders. *See* Exhibit A.

24. During Plaintiffs' bankruptcy, Plaintiff Tanvir timely completed all of the loan payments for the Chase HELOC, Seterus mortgage, and Ally loan and Plaintiffs completed all of the loan payments for the Ally Joint loan. Plaintiff Tanvir is still the owner of and still resides at the property that was the security interest for the Chase HELOC and Seterus mortgage. Plaintiff Tanvir is the free and clear owner of the automobile that was the security interest for the Ally loan. Plaintiffs are the free and clear owners of the automobile that was the security interest of the Ally Joint account.

25. On February 27, 2025, the Plaintiffs were discharged from Chapter 13

Bankruptcy.

26. A redacted copy of Plaintiffs' chapter 13 Discharge Order is attached hereto as Exhibit B.

27. Sometime in October 2025, Plaintiff Tanvir obtained Plaintiff's three-bureau credit reports and noticed that the Equifax, Experian, and Trans Union credit report(s) were not accurate.

28. A redacted copy of Plaintiff Tanvir's October 2025 tri-merge credit report is attached hereto as Exhibit C.

29. Sometime in October 2025, Plaintiff Rizwana obtained Plaintiff's three-bureau credit reports and noticed that the Equifax and Trans Union credit report(s) were not accurate.

30. A redacted copy of Plaintiff Rizwana's October 2025 tri-merge credit report is attached hereto as Exhibit D.

31. Within the Tri-Merge credit report, Plaintiff Tanvir noticed that Equifax reported the following inaccuracies for Plaintiff's Chase HELOC.

32. The Chase HELOC was reporting a payment status of "Wage Earner Plan", an account rating of "Derogatory", a date of last payment of January 1, 2019, a date of last activity of January 1, 2019, a high balance of $0.00, an account status of "Closed", a balanced owed of $0.00, a payment amount owed of $0.00, and within the creditor remarks it was reporting the "Account involved in Chapter 13 debt adj. Home Equity included in Chapter 13".

33. This reporting is incorrect because Plaintiff Tanvir completed all the required loan payments for the Chase HELOC, the HELOC was still open and owing a balance and payment amount and Plaintiff still owns and resides at the property that was the security interest of the Chase HELOC. The current reporting is a significant misrepresentation of this open and active

HELOC.

34. The accurate reporting of the Chase HELOC would have been to report a payment status of “Current”, an account rating of “Open”, a date of last activity as of the last payment date, a high balance of $25,171, and account status of “Open”, a balance owed of $15,598.00, a payment amount owed of $219.00, and should have reported within the creditor remarks section no remarks signaling a closed a account or a bankruptcy.

35. The current reporting of the Chase HELOC materially misleads lenders to believe Plaintiff Tanvir surrendered the property that was/is the security interest of the Chase HELOC and converted the Chase HELOC to an unsecured debt and discharged the debt by way of Plaintiff Tanvir’s chapter 13 bankruptcy.

36. The current reporting of the Chase HELOC was never an “historically accurate” way to report the Chase HELOC.

37. Within the Tri-Merge credit report, Plaintiff Tanvir noticed that Equifax reported the following inaccuracies for Plaintiff’s Seterus mortgage.

38. The Seterus mortgage was reporting a payment status of “Wage Earner Plan”, an account rating of “Derogatory”, a date of last payment of January 1, 2019, a date of last activity of January 1, 2019, a high balance of $0.00, and within the creditor remarks it was reporting the “Account involved in Chapter 13 debt adj. Account transferred or sold included in Chapter 13”.

39. This reporting is incorrect because Plaintiff Tanvir completed all the required loan payments for the Seterus mortgage, the mortgage was closed and transferred to another servicer and Plaintiff still owns and resides at the property that was the security interest of the Seterus mortgage. The current reporting is a significant misrepresentation of this fully paid and closed account.

40. The accurate reporting of the Seterus mortgage would have been to report a payment status of "Current", an account rating of "Paid/Closed", a date of last activity as of the last payment date, a high balance of $143,125, and should have reported within the creditor remarks section "Mortgage closed or paid account/zero balance".

41. The current reporting of the Seterus mortgage materially misleads lenders to believe Plaintiff Tanvir surrendered the property that was/is the security interest of the Seterus mortgage and converted the Seterus mortgage to an unsecured debt and discharged the debt by way of Plaintiffs' chapter 13 bankruptcy.

42. The current reporting of the Seterus mortgage was never an "historically accurate" way to report the Seterus mortgage.

43. Within the Tri-Merge credit report, Plaintiff Tanvir noticed that Equifax reported the following inaccuracies for Plaintiff's Ally account.

44. The Ally account was reporting a payment status of "Wage Earner Plan", a date of last payment of December 1, 2018, a date of last activity of December 1, 2018, a high balance of $0.00, and within the creditor remarks it was reporting the "Account involved in Chapter 13 debt adj. Closed or paid account/zero balance included in Chapter 13".

45. This reporting is incorrect because Plaintiff Tanvir completed all the required loan payments for the Ally account, Plaintiff is the free and clear owner of the automobile that was the security interest of the Ally account, and the current reporting is a significant misrepresentation of this fully paid and closed account.

46. The accurate reporting of the Ally account would have been to report a payment status of "Current", an account rating of "Paid/Closed", a date of last activity as of the last payment date, a high balance of $29,261, and should have reported within the creditor remarks

section "Auto closed or paid account/zero balance".

47. The current reporting of the Ally account materially misleads lenders to believe Plaintiff Tanvir surrendered the automobile that was/is the security interest of the Ally account and converted the Ally loan to an unsecured debt and discharged the debt by way of Plaintiffs' chapter 13 bankruptcy.

48. The current reporting of the Ally account was never an "historically accurate" way to report the Ally account.

49. Within the Tri-Merge credit report, Plaintiffs noticed that Equifax reported the following inaccuracies for Plaintiffs' Ally Joint account.

50. The Ally Joint account was reporting a payment status of "Wage Earner Plan", an account rating of "Derogatory", a date of last payment of December 1, 2018, a date of last activity of December 1, 2018, a high balance of $0.00, and within the creditor remarks it was reporting the "Account involved in Chapter 13 debt adj. Auto included in Chapter 13".

51. This reporting is incorrect because Plaintiffs completed all the required loan payments for the Aly Joint account, Plaintiffs are the free and clear owners of the automobile that was the security interest of the Ally Joint account, and the current reporting is a significant misrepresentation of this fully paid and closed account.

52. The accurate reporting of the Ally Joint account would have been to report a payment status of "Current", an account rating of "Paid/Closed", a date of last activity as of the last payment date, a high balance of $15,348, and should have reported within the creditor remarks section "Auto closed or paid account/zero balance".

53. The current reporting of the Ally Joint account materially misleads lenders to believe Plaintiffs surrendered the automobile that was/is the security interest of the Ally Joint

account and converted the Ally Joint loan to an unsecured debt and discharged the debt by way of Plaintiffs' chapter 13 bankruptcy.

54. The current reporting of the Ally Joint account was never an "historically accurate" way to report the Ally Joint account.

55. Within the Tri-Merge credit report, Plaintiff Tanvir did notice that Experian reported the Chase HELOC tradeline accurately as follows with a $15,598 balance, a $219 payment amount, as open and without the negative bankruptcy remarks and indicators.

56. Within the Tri-Merge credit report, Plaintiff Tanvir noticed that Experian reported the following inaccuracies for Plaintiff Tanvir's Seterus mortgage.

57. The Seterus mortgage was reporting a payment status of "Wage Earner Plan", an account rating of "Derogatory", no date of last payment, a date of last activity of February 1, 2019, and within the creditor remarks it was reporting the "Debt included in or discharged through Bankruptcy Chapter 13.".

58. This reporting is incorrect because Plaintiff Tanvir completed all the required loan payments for the Seterus mortgage, the mortgage was closed and transferred to another servicer and Plaintiff still owns and resides at the property that was the security interest of the Seterus mortgage. The current reporting is a significant misrepresentation of this fully paid and closed account.

59. The accurate reporting of the Seterus mortgage would have been to report a payment status of "Current", an account rating of "Paid/Closed", a date of last activity as of the last payment date, and should have reported within the creditor remarks section "Mortgage closed or paid account/zero balance".

60. The current reporting of the Seterus mortgage materially misleads lenders to

believe Plaintiff surrendered the property that was/is the security interest of the Seterus mortgage and converted the Seterus mortgage to an unsecured debt and discharged the debt by way of Plaintiffs' chapter 13 bankruptcy.

61. The current reporting of the Seterus mortgage was never an "historically accurate" way to report the Seterus mortgage.

62. Within the Tri-Merge credit report, Plaintiff Tanvir noticed that Trans Union reported the following inaccuracies for Plaintiff Tanvir's Chase HELOC.

63. The Chase HELOC was reporting an account rating of "Closed", an account status of "Closed", and within the creditor remarks it was reporting the "Cl No Lngr Avl-In Rpymt Phase".

64. This reporting is incorrect because Plaintiff Tanvir completed all the required loan payments for the Chase HELOC, the HELOC was still open and owing a balance and payment amount and Plaintiff still owns and resides at the property that was the security interest of the Chase HELOC. The current reporting is a significant misrepresentation of this open and active HELOC.

65. The accurate reporting of the Chase HELOC would have been to report a payment status of "Current", an account rating of "Open", a date of last activity as of the last payment date, a high balance of $25,171, and account status of "Open", a balance owed of $15,598.00, a payment amount owed of $219.00 and should have reported within the creditor remarks section no remarks signaling a closed account or a bankruptcy or a repayment phase.

66. The current reporting of the Chase HELOC materially misleads lenders to believe Plaintiff Tanvir surrendered the property that was/is the security interest of the Chase HELOC and converted the Chase HELOC to an unsecured debt and discharged the debt by way of

Plaintiffs' chapter 13 bankruptcy.

67. The current reporting of the Chase HELOC was never an "historically accurate" way to report the Chase HELOC.

68. Within the Tri-Merge credit report, Plaintiff Tanvir noticed that Trans Union reported the following inaccuracies for Plaintiff Tanvir's Seterus mortgage.

69. The Seterus mortgage was reporting a payment status of "Wage Earner Plan", an account rating of "Derogatory", a date of last payment of February 1, 2019, a date of last activity of March 1, 2019, and within the creditor remarks it was reporting the "Chapter 13; wage earner plan account".

70. This reporting is incorrect because Plaintiff Tanvir completed all the required loan payments for the Seterus mortgage, the mortgage was closed and transferred to another servicer and Plaintiff still owns and resides at the property that was the security interest of the Seterus mortgage. The current reporting is a significant misrepresentation of this fully paid and closed account.

71. The accurate reporting of the Seterus mortgage would have been to report a payment status of "Current", an account rating of "Paid/Closed", a date of last activity as of the last payment date, and should have reported within the creditor remarks section "Mortgage closed or paid account/zero balance".

72. The current reporting of the Seterus mortgage materially misleads lenders to believe Plaintiff Tanvir surrendered the property that was/is the security interest of the Seterus mortgage and converted the Seterus mortgage to an unsecured debt and discharged the debt by way of Plaintiffs' chapter 13 bankruptcy.

73. The current reporting of the Seterus mortgage was never an "historically accurate"

way to report the Seterus mortgage.

74. Within the Tri-Merge credit report, Plaintiff Tanvir noticed that Trans Union reported the following inaccuracies for Plaintiff Tanvir's Ally account.

75. The Ally account was reporting an account rating of "Derogatory", a date of last payment of March 5, 2024, a date of last activity of March 5, 2024, and within the creditor remarks it was reporting the "Chapter 13; wage earner plan account".

76. This reporting is incorrect because Plaintiff Tanvir completed all the required loan payments for the Ally account, Plaintiff Tanvir is the free and clear owner of the automobile that was the security interest of the Ally account, and the current reporting is a significant misrepresentation of this fully paid and closed account.

77. The accurate reporting of the Ally account would have been to report an account rating of "Paid/Closed", an updated date of last activity as of the last payment date, and should have reported within the creditor remarks section "Auto closed or paid account/zero balance".

78. The current reporting of the Ally account materially misleads lenders to believe Plaintiff Tanvir surrendered the automobile that was/is the security interest of the Ally account and converted the Ally loan to an unsecured debt and discharged the debt by way of Plaintiff's chapter 13 bankruptcy.

79. The current reporting of the Ally account was never an "historically accurate" way to report the Ally account.

80. Within the Tri-Merge credit report, Plaintiffs noticed that Trans Union reported the following inaccuracies for Plaintiffs' Ally Joint account.

81. The Ally Joint account was reporting a payment status of "Wage Earner Plan", an account rating of "Derogatory", a date of last payment of May 3, 2019, a date of last activity of

June 27, 2019, and within the creditor remarks it was reporting the "Chapter 13; wage earner plan account".

82. This reporting is incorrect because Plaintiffs completed all the required loan payments for the Ally Joint account, Plaintiffs are the free and clear owners of the automobile that was the security interest of the Ally Joint account, and the current reporting is a significant misrepresentation of this fully paid and closed account.

83. The accurate reporting of the Ally Joint account would have been to report a payment status of "Current", an account rating of "Paid/Closed", a date of last activity as of the last payment date, and should have reported within the creditor remarks section "Auto closed or paid account/zero balance".

84. The current reporting of the Ally Joint account materially misleads lenders to believe Plaintiffs surrendered the automobile that was/is the security interest of the Ally Joint account and converted the Ally Joint loan to an unsecured debt and discharged the debt by way of Plaintiff's chapter 13 bankruptcy.

85. The current reporting of the Ally Joint account was never an "historically accurate" way to report the Ally Joint account.

86. On or about December 2025, Plaintiffs sent direct disputes to the CRA Defendant(s) and requested that the CRAs investigate the reporting of Plaintiff Tanvir's Chase HELOC, Seterus mortgage, and Ally account and Plaintiffs' Ally Joint account, and Plaintiffs specifically addressed the above referenced issues with the reporting stated in the above Paragraphs. Plaintiffs requested that under the FCRA, the CRAs conduct reasonable investigations and/or remedy the inaccuracies on Plaintiffs' credit reports concerning the accounts.

87. Redacted copies of Plaintiffs' unsigned dispute letters sent to CRAs are attached hereto as Exhibits E, F, and G respectively.

88. Equifax responded to Plaintiff Tanvir's dispute on December 18, 2025.

89. A redacted copy of Equifax's response is attached hereto as Exhibit H.

90. Equifax failed to respond to Plaintiff Rizwana's dispute.

91. Plaintiffs requested an updated consumer report to see if any changes were made on Plaintiffs' Consumer Reports.

92. Redacted copies of Plaintiffs' updated tri-merge credit reports are each attached hereto as Exhibits I and J.

93. Equifax's response and the updated Consumer Report showed that Equifax made the correction for Plaintiff Tanvir's Chase HELOC and reported open, with a balance, and without the negative bankruptcy remarks and indicators.

94. Equifax's response and the updated Consumer Report showed that Equifax made none of the substantive changes Plaintiff Tanvir requested in the direct dispute to Equifax and deleted the Seterus mortgage without explanation or reasons for an outright deletion.

95. Equifax's response, or lack thereof, were not the result of a reasonable investigation into Plaintiff Tanvir's dispute, and Equifax failed to remedy the inaccuracies within the Seterus account. Further, as will be discussed below, Trans Union fixed the reporting of the Seterus mortgage upon receiving the same dispute.

96. Upon the Plaintiff Tanvir's request to Equifax to verify and correct the Seterus account, and in accordance with Equifax's standard procedures, as well as the FCRA, because Equifax ignored the evidence Plaintiff included with Plaintiff's dispute letter and unilaterally deleted the Seterus account from Plaintiff's Consumer Report.

97. Equifax seemingly saw the word "Bankruptcy" in Plaintiff Tanvir's dispute letter and unilaterally decided to delete the Seterus account and not even attempt to contact the furnisher of credit information.

98. Equifax simply ignored Plaintiff Tanvir's request to involve Plaintiff Tanvir's lender for the Seterus account and did not evaluate or consider the actual status of these accounts and lazily deleted the Seterus account without any explanation.

99. Equifax's willful failure to involve Seterus in Plaintiff Tanvir's FCRA dispute is a willful violation of the Fair Credit Reporting Act (FCRA) under § 1681i(a)(2). The FCRA required Equifax to promptly notify Seterus of the dispute and provide all relevant information it received from Plaintiff for Seterus to investigate.

100. Equifax willfully decided to keep Plaintiff Tanvir's dispute to themselves and deleted the Seterus account without perform any investigation at all.

101. Equifax's failure to investigate Plaintiff Tanvir's dispute letter, its failure to include Seterus in the dispute process, and its willful actions have injured Plaintiff Tanvir's credit standing.

102. In the alternative to the allegation that Equifax failed to contact Furnisher Defendant, it is alleged that Equifax did forward some notice of the dispute to the Seterus, and Seterus failed to conduct a lawful investigation.

103. Equifax's response and the updated Consumer Report that Equifax made none of the substantive changes Plaintiff Tanvir requested in the direct dispute to Equifax and deleted the Ally account without explanation or reasons for an outright deletion.

104. Equifax's response, or lack thereof, were not the result of a reasonable investigation into Plaintiff Tanvir's dispute, and Equifax failed to remedy the inaccuracies within

the Ally account.

105. Upon the Plaintiff Tanvir's request to Equifax to verify and correct the Ally account, and in accordance with Equifax's standard procedures, as well as the FCRA, because Equifax ignored the evidence Plaintiff included with Plaintiff Tanvir's dispute letter and unilaterally deleted the Ally account from Plaintiff Tanvir's Consumer Report.

106. Equifax seemingly saw the word "Bankruptcy" in Plaintiff's dispute letter and unilaterally decided to delete the Ally account and not even attempt to contact the furnisher of credit information.

107. Equifax simply ignored Plaintiff's request to involve Plaintiff's lender for the Ally account and did not evaluate or consider the actual status of these accounts and lazily deleted the Ally account without any explanation.

108. Equifax's willful failure to involve Ally in Plaintiff's FCRA dispute is a willful violation of the Fair Credit Reporting Act (FCRA) under § 1681i(a)(2). The FCRA required Equifax to promptly notify Ally of the dispute and provide all relevant information it received from Plaintiff for Ally to investigate.

109. Equifax willfully decided to keep Plaintiff Tanvir's dispute to themselves and deleted the Ally account without perform any investigation at all.

110. Equifax's failure to investigate Plaintiff Tanvir's dispute letter, its failure to include Ally in the dispute process, and its willful actions have injured Plaintiff's credit standing.

111. In the alternative to the allegation that Equifax failed to contact Furnisher Defendant, it is alleged that Equifax did forward some notice of the dispute to the Furnisher Defendant, and the Furnisher Defendant failed to conduct a lawful investigation.

112. Furnisher Defendant knows how to report the Ally account accurately, and their

response to the CRA was willfully reckless.

113. Furnisher Defendant knows the current reporting of the Ally account materially misleads lenders to believe Plaintiffs surrendered the automobile that was the security interest of the Ally account and converted the Ally loan to an unsecured debt and discharged the debt by way of Plaintiff Tanvir's chapter 13 bankruptcy.

114. Furnisher Defendant knows the current reporting of the Ally account was never an "historically accurate" way to report the Ally account.

115. Equifax's responses and the updated Consumer Reports showed that Equifax made none of the substantive changes Plaintiffs requested in the direct dispute to Equifax, and deleted the Ally Joint account without explanation or reasons for an outright deletion.

116. Equifax's response, or lack thereof, were not the result of a reasonable investigation into Plaintiffs' disputes, and Equifax failed to remedy the inaccuracies within the Ally Joint account.

117. Upon the Plaintiffs' request to Equifax to verify and correct the Ally Joint account, and in accordance with Equifax's standard procedures, as well as the FCRA, because Equifax ignored the evidence Plaintiffs included with Plaintiffs' dispute letters and unilaterally deleted the Ally Joint account from Plaintiffs' Consumer Report.

118. Equifax seemingly saw the word "Bankruptcy" in Plaintiffs' dispute letters and unilaterally decided to delete the Ally Joint account and not even attempt to contact the furnisher of credit information.

119. Equifax simply ignored Plaintiffs' requests to involve Plaintiffs' lender for the Ally Joint account and did not evaluate or consider the actual status of these accounts and lazily deleted the Ally Joint account without any explanation.

120. Equifax's willful failure to involve Ally in Plaintiffs' FCRA dispute is a willful violation of the Fair Credit Reporting Act (FCRA) under § 1681i(a)(2). The FCRA required Equifax to promptly notify Ally of the dispute and provide all relevant information it received from Plaintiffs for Ally to investigate.

121. Equifax willfully decided to keep Plaintiffs' dispute to themselves and deleted the Ally Joint account without perform any investigation at all.

122. Equifax's failure to investigate Plaintiffs' dispute letters, its failure to include Ally in the dispute process, and its willful actions have injured Plaintiffs' credit standing.

123. In the alternative to the allegation that Equifax failed to contact Furnisher Defendant, it is alleged that Equifax did forward some notice of the dispute to the Furnisher Defendant, and the Furnisher Defendant failed to conduct a lawful investigation.

124. Furnisher Defendant knows how to report the Ally Joint account accurately, and their response to the CRA was willfully reckless.

125. Furnisher Defendant knows the current reporting of the Ally Joint account materially misleads lenders to believe Plaintiffs surrendered the automobile that was the security interest of the Ally Joint account and converted the Ally Joint loan to an unsecured debt and discharged the debt by way of Plaintiffs' chapter 13 bankruptcy.

126. Furnisher Defendant knows the current reporting of the Ally Joint account was never an "historically accurate" way to report the Ally Joint account.

127. Experian responded to Plaintiff Tanvir's dispute on December 18, 2025.

128. A redacted copy of Experian's response is each attached hereto as Exhibit K.

129. Plaintiff requested an updated consumer report to see if any changes were made to Plaintiff Tanvir's Consumer Report. *See* Exhibit I.

130. Experian's response and the updated Consumer Report showed that Experian made none of the substantive changes Plaintiff requested in the direct dispute to Experian and deleted the Seterus mortgage without explanation or reasons for an outright deletion.

131. Experian's response, or lack thereof, were not the result of a reasonable investigation into Plaintiff Tanvir's dispute, and Experian failed to remedy the inaccuracies within the Seterus account. Further, as will be discussed below, Trans Union fixed the reporting of the Seterus mortgage upon receiving the same dispute.

132. Upon the Plaintiff Tanvir's request to Experian to verify and correct the Seterus account, and in accordance with Experian's standard procedures, as well as the FCRA, because Experian ignored the evidence Plaintiff included with Plaintiff Tanvir's dispute letter and unilaterally deleted the Seterus account from Plaintiff Tanvir's Consumer Report.

133. Experian seemingly saw the word "Bankruptcy" in Plaintiff Tanvir's dispute letter and unilaterally decided to delete the Seterus account and not even attempt to contact the furnisher of credit information.

134. Experian simply ignored Plaintiff Tanvir's request to involve Plaintiff Tanvir's lender for the Seterus account and did not evaluate or consider the actual status of these accounts and lazily deleted the Seterus account without any explanation.

135. Experian's willful failure to involve Seterus in Plaintiff Tanvir's FCRA dispute is a willful violation of the Fair Credit Reporting Act (FCRA) under § 1681i(a)(2). The FCRA required Experian to promptly notify Seterus of the dispute and provide all relevant information it received from Plaintiff for Seterus to investigate.

136. Experian willfully decided to keep Plaintiff Tanvir's dispute to themselves and deleted the Seterus account without perform any investigation at all.

137. Experian's failure to investigate Plaintiff Tanvir's dispute letter, its failure to include Seterus in the dispute process, and its willful actions have injured Plaintiff Tanvir's credit standing.

138. In the alternative to the allegation that Experian failed to contact Furnisher Defendant, it is alleged that Experian did forward some notice of the dispute to the Furnisher Defendant, and the Furnisher Defendant failed to conduct a lawful investigation.

139. Furnisher Defendant knows how to report the Seterus mortgage accurately, and their response to the CRA was willfully reckless.

140. Furnisher Defendant knows the current reporting of the Seterus mortgage materially misleads lenders to believe Plaintiffs surrendered the property that was the security interest of the Seterus loan and converted the Seterus loan to an unsecured debt and discharged the debt by way of Plaintiffs' chapter 13 bankruptcy.

141. Furnisher Defendant knows the current reporting of the Seterus mortgage was never an "historically accurate" way to report the Seterus mortgage.

142. Trans Union responded to Plaintiff Tanvir's dispute on December 16, 2025, and Plaintiff Rizwana's dispute on December 25, 2025.

143. Redacted copies of Trans Union's responses are each attached hereto as Exhibits L and M.

144. Plaintiffs requested an updated consumer report to see if any changes were made on Plaintiffs' Consumer Reports. *See* Exhibits I and J.

145. Trans Union's response and the updated Consumer Report showed that Trans Union made none of the substantive changes Plaintiff Tanvir requested in the direct dispute to Trans Union and continued to report the Chase HELOC inaccurately.

146. The Chase HELOC continued to report an account rating of "Closed", a date of last payment of November 16, 2025, a date of last activity of January 1, 2019, an account status of "Closed", a balanced owed of $15,392, a payment amount owed of $214, a dispute status of "Account not disputed", and within the creditor remarks it was reporting the "Cl No Lngr Avl-In Rpymt Phase". Notably, there were no remarks that this account was disputed.

147. Trans Union's response, or lack thereof, were not the result of a reasonable investigation into Plaintiff Tanvir's dispute and failed to remedy the inaccuracies within the Chase HELOC and gave no explanation as to why the Chase HELOC was still reporting inaccurately. Further, Experian reported accurately and Equifax fixed the same disputed issues.

148. Plaintiff's inaccurate Trans Union consumer report was disseminated to third parties before and/or after the instant dispute.

149. The current reporting of the Chase HELOC materially misleads lenders to believe Plaintiff surrendered the property that was the security interest of the Chase HELOC and converted the Chase HELOC to an unsecured debt and discharged the debt by way of Plaintiff's chapter 13 bankruptcy.

150. Trans Union chose to "verify" false information from an unreliable source, failed to correct the inaccurate information, and continued to publish the inaccurate information regarding Plaintiff Tanvir's Chase HELOC.

151. Upon the Plaintiff's request to Trans Union for verification and correction regarding the Chase HELOC, and in accordance with Trans Union's standard procedures, Trans Union did not evaluate or consider any of Plaintiff Tanvir's information, claims or evidence, and did not make any attempt to verify the reporting of the Chase HELOC substantially or reasonably.

152. Trans Union has adopted the Metro 2 reporting standard, Trans Union deviated

from the standard based on its conduct in this case, and by Trans Union deviating from the adopted standard, Trans Union injured Plaintiff Tanvir's credit standing.

153. In the alternative, Trans Union failed to contact Chase, therefore, failed to perform any investigation at all.

154. In the alternative to the allegation that Trans Union failed to contact Chase, it is alleged that Trans Union did forward some notice of the dispute to Chase, and still failed to conduct a lawful investigation.

155. Trans Union's response and the updated Consumer Report showed that Trans Union made the correction for the Seterus mortgage and reported transferred, closed, and without the negative bankruptcy remarks and indicators.

156. Trans Union's response and the updated Consumer Report showed that Trans Union made none of the substantive changes Plaintiff Tanvir requested in the direct dispute to Trans Union and deleted the Ally account without explanation or reasons for an outright deletion.

157. Trans Union's response, or lack thereof, were not the result of a reasonable investigation into Plaintiff Tanvir's dispute, and Trans Union failed to remedy the inaccuracies within the Ally account.

158. Upon the Plaintiff Tanvir's request to Trans Union to verify and correct the Ally account, and in accordance with Trans Union's standard procedures, as well as the FCRA, because Trans Union ignored the evidence Plaintiff included with Plaintiff Tanvir's dispute letter and unilaterally deleted the Ally account from Plaintiff Tanvir's Consumer Report.

159. Trans Union seemingly saw the word "Bankruptcy" in Plaintiff Tanvir's dispute letter and unilaterally decided to delete the Ally account and not even attempt to contact the furnisher of credit information.

160. Trans Union simply ignored Plaintiff Tanvir's request to involve Plaintiff Tanvir's lender for the Ally account and did not evaluate or consider the actual status of these accounts and lazily deleted the Ally account without any explanation.

161. Trans Union's willful failure to involve Ally in Plaintiff Tanvir's FCRA dispute is a willful violation of the Fair Credit Reporting Act (FCRA) under § 1681i(a)(2). The FCRA required Trans Union to promptly notify Ally of the dispute and provide all relevant information it received from Plaintiff for Ally to investigate.

162. Trans Union willfully decided to keep Plaintiff Tanvir's dispute to themselves and deleted the Ally account without perform any investigation at all.

163. Trans Union's failure to investigate Plaintiff Tanvir's dispute letter, its failure to include Ally in the dispute process, and its willful actions have injured Plaintiff Tanvir's credit standing.

164. In the alternative to the allegation that Trans Union failed to contact Furnisher Defendant, it is alleged that Trans Union did forward some notice of the dispute to the Furnisher Defendant, and the Furnisher Defendant failed to conduct a lawful investigation.

165. Furnisher Defendant knows how to report the Ally account accurately, and their response to the CRA was willfully reckless.

166. Furnisher Defendant knows the current reporting of the Ally account materially misleads lenders to believe Plaintiffs surrendered the automobile that was the security interest of the Ally account and converted the Ally loan to an unsecured debt and discharged the debt by way of Plaintiffs' chapter 13 bankruptcy.

167. Furnisher Defendant knows the current reporting of the Ally account was never an "historically accurate" way to report the Ally account.

168. Trans Union's responses and the updated Consumer Reports showed that Trans Union made none of the substantive changes Plaintiffs requested in the direct dispute to Trans Union and deleted the Ally Joint account without explanation or reasons for an outright deletion.

169. Trans Union's response, or lack thereof, were not the result of a reasonable investigation into Plaintiffs' disputes, and Trans Union failed to remedy the inaccuracies within the Ally Joint account.

170. Upon the Plaintiff's request to Trans Union to verify and correct the Ally Joint account, and in accordance with Trans Union's standard procedures, as well as the FCRA, because Trans Union ignored the evidence Plaintiffs included with Plaintiffs' dispute letters and unilaterally deleted the Ally Joint account from Plaintiffs' Consumer Reports.

171. Trans Union seemingly saw the word "Bankruptcy" in Plaintiffs' dispute letters and unilaterally decided to delete the Ally Joint account and not even attempt to contact the furnisher of credit information.

172. Trans Union simply ignored Plaintiffs' requests to involve Plaintiffs' lender for the Ally Joint account and did not evaluate or consider the actual status of these accounts and lazily deleted the Ally Joint account without any explanation.

173. Trans Union's willful failure to involve Ally in Plaintiffs' FCRA dispute is a willful violation of the Fair Credit Reporting Act (FCRA) under § 1681i(a)(2). The FCRA required Trans Union to promptly notify Ally of the dispute and provide all relevant information it received from Plaintiffs for Ally to investigate.

174. Trans Union willfully decided to keep Plaintiffs' disputes to themselves and deleted the Ally Joint account without perform any investigation at all.

175. Trans Union's failure to investigate Plaintiffs' dispute letters, its failure to include

Ally in the dispute process, and its willful actions have injured Plaintiffs' credit standing.

176. In the alternative to the allegation that Trans Union failed to contact Furnisher Defendant, it is alleged that Trans Union did forward some notice of the dispute to the Furnisher Defendant, and the Furnisher Defendant failed to conduct a lawful investigation.

177. Furnisher Defendant knows how to report the Ally Joint account accurately, and their response to the CRA was willfully reckless.

178. Furnisher Defendant knows the current reporting of the Ally Joint account materially misleads lenders to believe Plaintiffs surrendered the automobile that was the security interest of the Ally Joint account and converted the Ally Joint loan to an unsecured debt and discharged the debt by way of Plaintiffs' chapter 13 bankruptcy.

179. Furnisher Defendant knows the current reporting of the Ally Joint account was never an "historically accurate" way to report the Ally Joint account.

## V. GROUNDS FOR RELIEF

### EQUIFAX'S VIOLATION OF THE FCRA
### (15 U.S.C. §1681e(b))

180. The Plaintiffs reallege and incorporate all paragraphs above as if fully set out herein.

181. Equifax violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning the Plaintiffs.

182. The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of

the information concerning the individual about whom the report relates." 15 U.S.C. § 168le(b) (emphasis added).

183. Equifax knew or should have known of Plaintiffs' bankruptcy status, history, and/or payment history were reporting inaccurately, and yet, Equifax continued to prepare a patently false consumer report concerning Plaintiffs.

184. Despite actual and implied knowledge that Plaintiffs' credit report was and/or is not accurate, Equifax readily provided false reports to one or more third parties, thereby misrepresenting Plaintiffs, and ultimately Plaintiffs' creditworthiness.

185. After Equifax knew or should have known Plaintiffs' bankruptcy status, history, and/or payment history were inaccurate for Plaintiff Tanvir's Seterus and Ally tradeline(s) and Plaintiffs' Ally Joint tradeline(s), it failed to make the corrections as would be required to attain "maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 168le(b).

186. As a result of Equifax's conduct, action, and inaction, the Plaintiffs suffered damages, including, but not limited to: loss in Plaintiffs' abilities to finance goods; loss of credit, loss of the abilities to purchase and benefit from credit; emotional anguish, frustration, and annoyance from being deterred from applying for credit; mental anguish, humiliation, anger, frustration, annoyance, and embarrassment as a result of the publication of false information; lost credit capacity and decreased credit scores; damage to reputation; mental anguish, emotional distress, frustration, humiliation, and annoyance as a result of being burdened with a false credit reporting history; lost opportunities to obtain credit in the form of an unspecified number of credit offers that Plaintiffs did not receive because of the false and derogatory information contained in Plaintiffs' credit reports; Plaintiffs' lowered credit score may have impacted the interest rates

Plaintiffs have on current loans; Plaintiffs' lowered credit score may have impacted the interest rates Plaintiffs received during this ordeal; Plaintiffs' lowered credit score may have impacted the credit limits Plaintiffs have on existing accounts; Plaintiffs spent considerable time, effort, and expense attempting to force Defendant to comply with Defendant's statutory obligations, including but not limited to reviewing information online, telephone calls, emails, writing letters, sending letters, and attempting to decipher letters, reports, and other instruments provided by Defendant; loss of self-esteem because of Defendant's continued persistence in painting Plaintiffs in a false light both personally and financially; anxiety when considering seeking additional credit because Plaintiffs believe Plaintiffs will be forced to be subjected to the humiliation of having to explain the false and defamatory information; and the costs and time Plaintiffs have spent trying to repair Plaintiffs' credit in light of the damage done to it continuously by Defendant.

187. Equifax's conduct, action, and inaction, were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 168ln. In the alternative, such conduct, action, and inaction were negligent, entitling the Plaintiffs to recover under 15 U.S.C. § 1681o.

188. The Plaintiffs are entitled to recover costs and attorney's fees from Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681o.

**EQUIFAX'S VIOLATION OF THE FCRA**
**(15 U.S.C. §1681i)**

189. The Plaintiffs reallege and incorporate all paragraphs above as if fully set out herein.

190. Equifax violated 15 U.S.C. § 1681i on multiple occasions by failing to update or correct inaccurate information in the Plaintiffs' credit files after receiving actual notice of such

inaccuracies, failing to conduct a lawful reinvestigation, failing to forward all relevant information to furnisher(s), failing to maintain reasonable procedures with which to filter and verify disputed information in the Plaintiffs' credit files, and relying upon verification from a source it has reason to know is unreliable.

191. As a result of Equifax's conduct, action, and inaction, the Plaintiffs suffered damages, including, but not limited to: loss in Plaintiffs' abilities to finance goods; loss of credit, loss of the abilities to purchase and benefit from credit; emotional anguish, frustration, and annoyance from being deterred from applying for credit; mental anguish, humiliation, anger, frustration, annoyance, and embarrassment as a result of the publication of false information; lost credit capacity and decreased credit scores; damage to reputation; mental anguish, emotional distress, frustration, humiliation, and annoyance as a result of being burdened with a false credit reporting history; lost opportunities to obtain credit in the form of an unspecified number of credit offers that Plaintiffs did not receive because of the false and derogatory information contained in Plaintiffs' credit reports; Plaintiffs' lowered credit score may have impacted the interest rates Plaintiffs have on current loans; Plaintiffs' lowered credit score may have impacted the interest rates Plaintiffs received during this ordeal; Plaintiffs' lowered credit scores may have impacted the credit limits Plaintiffs have on existing accounts; Plaintiffs spent considerable time, effort, and expense attempting to force Defendant to comply with Defendant's statutory obligations, including but not limited to reviewing information online, telephone calls, emails, writing letters, sending letters, and attempting to decipher letters, reports, and other instruments provided by Defendant; loss of self-esteem because of Defendant's continued persistence in painting Plaintiffs in a false light both personally and financially; anxiety when considering seeking additional credit because Plaintiffs believe Plaintiffs will be forced to be subjected to the humiliation of having to

explain the false and defamatory information; and the costs and time Plaintiffs have spent trying to repair Plaintiffs' credit in light of the damage done to it continuously by Defendant.

192. Equifax's conduct, action, and inaction, were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, such conduct, action, and inaction were negligent entitling the Plaintiffs to recover actual damages under 15 U.S.C. § 1681o.

193. The Plaintiffs are entitled to recover costs and attorney's fees from Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 1681o.

**EXPERIAN'S VIOLATION OF THE FCRA**
**(15 U.S.C. §1681e(b))**

194. The Plaintiff realleges and incorporates all paragraphs above as if fully set out herein.

195. Experian violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning the Plaintiff Tanvir.

196. The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 168le(b) (emphasis added).

197. Experian knew or should have known of Plaintiff Tanvir's bankruptcy status, history, and/or payment history were reporting inaccurately, and yet, Experian continued to prepare a patently false consumer report concerning Plaintiff Tanvir.

198. Despite actual and implied knowledge that Plaintiff Tanvir's credit report was

and/or is not accurate, Experian readily provided false reports to one or more third parties, thereby misrepresenting Plaintiff Tanvir, and ultimately Plaintiff Tanvir's creditworthiness.

199. After Experian knew or should have known Plaintiff Tanvir's bankruptcy status, history, and/or payment history were inaccurate for Plaintiff Tanvir's Seterus tradeline(s), it failed to make the corrections as would be required to attain "maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 168le(b).

200. As a result of Experian's conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to: loss in Plaintiff Tanvir's abilities to finance goods; loss of credit, loss of the abilities to purchase and benefit from credit; emotional anguish, frustration, and annoyance from being deterred from applying for credit; mental anguish, humiliation, anger, frustration, annoyance, and embarrassment as a result of the publication of false information; lost credit capacity and decreased credit scores; damage to reputation; mental anguish, emotional distress, frustration, humiliation, and annoyance as a result of being burdened with a false credit reporting history; lost opportunities to obtain credit in the form of an unspecified number of credit offers that Plaintiffs did not receive because of the false and derogatory information contained in Plaintiff Tanvir's credit reports; Plaintiff Tanvir's lowered credit score may have impacted the interest rates Plaintiffs have on current loans; Plaintiff Tanvir's lowered credit score may have impacted the interest rates Plaintiff received during this ordeal; Plaintiff Tanvir's lowered credit score may have impacted the credit limits Plaintiff has on existing accounts; Plaintiff spent considerable time, effort, and expense attempting to force Defendant to comply with Defendant's statutory obligations, including but not limited to reviewing information online, telephone calls, emails, writing letters, sending letters, and attempting to decipher letters, reports, and other instruments provided by Defendant; loss of self-esteem because of Defendant's continued

persistence in painting Plaintiff in a false light both personally and financially; anxiety when considering seeking additional credit because Plaintiff believes Plaintiff will be forced to be subjected to the humiliation of having to explain the false and defamatory information; and the costs and time Plaintiff has spent trying to repair Plaintiff Tanvir's credit in light of the damage done to it continuously by Defendant.

201. Experian's conduct, action, and inaction, were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 168ln. In the alternative, such conduct, action, and inaction were negligent, entitling the Plaintiff to recover under 15 U.S.C. § 1681o.

202. The Plaintiff is entitled to recover costs and attorney's fees from Experian in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681o.

**EXPERIAN'S VIOLATION OF THE FCRA**
**(15 U.S.C. §1681i)**

203. The Plaintiff realleges and incorporates all paragraphs above as if fully set out herein.

204. Experian violated 15 U.S.C. § 1681i on multiple occasions by failing to update or correct inaccurate information in the Plaintiff Tanvir's credit files after receiving actual notice of such inaccuracies, failing to conduct a lawful reinvestigation, failing to forward all relevant information to furnisher(s), failing to maintain reasonable procedures with which to filter and verify disputed information in Plaintiff Tanvir's credit files, and relying upon verification from a source it has reason to know is unreliable.

205. As a result of Experian's conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to: loss in Plaintiff Tanvir's abilities to finance goods; loss of

credit, loss of the abilities to purchase and benefit from credit; emotional anguish, frustration, and annoyance from being deterred from applying for credit; mental anguish, humiliation, anger, frustration, annoyance, and embarrassment as a result of the publication of false information; lost credit capacity and decreased credit scores; damage to reputation; mental anguish, emotional distress, frustration, humiliation, and annoyance as a result of being burdened with a false credit reporting history; lost opportunities to obtain credit in the form of an unspecified number of credit offers that Plaintiff did not receive because of the false and derogatory information contained in Plaintiff Tanvir's credit reports; Plaintiff Tanvir's lowered credit score may have impacted the interest rates Plaintiff has on current loans; Plaintiff Tanvir's lowered credit score may have impacted the interest rates Plaintiff received during this ordeal; Plaintiff Tanvir's lowered credit scores may have impacted the credit limits Plaintiff has on existing accounts; Plaintiff spent considerable time, effort, and expense attempting to force Defendant to comply with Defendant's statutory obligations, including but not limited to reviewing information online, telephone calls, emails, writing letters, sending letters, and attempting to decipher letters, reports, and other instruments provided by Defendant; loss of self-esteem because of Defendant's continued persistence in painting Plaintiff in a false light both personally and financially; anxiety when considering seeking additional credit because Plaintiff believes Plaintiff will be forced to be subjected to the humiliation of having to explain the false and defamatory information; and the costs and time Plaintiff has spent trying to repair Plaintiff Tanvir's credit in light of the damage done to it continuously by Defendant.

206. Experian's conduct, action, and inaction, were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, such conduct, action, and inaction were negligent

entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

207. The Plaintiff is entitled to recover costs and attorney's fees from Experian in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 1681o.

**TRANS UNION'S VIOLATION OF THE FCRA**
**(15 U.S.C. §1681e(b))**

208. The Plaintiffs reallege and incorporate all paragraphs above as if fully set out herein.

209. Trans Union violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning the Plaintiffs.

210. The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 168le(b) (emphasis added).

211. Trans Union knew or should have known of Plaintiffs' bankruptcy status, history, and/or payment history were reporting inaccurately, and yet, Trans Union continued to prepare a patently false consumer report concerning Plaintiffs.

212. Despite actual and implied knowledge that Plaintiffs' credit report was and/or is not accurate, Trans Union readily provided false reports to one or more third parties, thereby misrepresenting Plaintiffs, and ultimately Plaintiffs' creditworthiness.

213. After Trans Union knew or should have known Plaintiffs' bankruptcy status, history, and/or payment history were inaccurate for Plaintiff Tanvir's Chase HELOC and Ally tradeline(s) and Plaintiffs' Ally Joint tradeline(s), it failed to make the corrections as would be

required to attain "maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 168le(b).

214. As a result of Trans Union's conduct, action, and inaction, the Plaintiffs suffered damages, including, but not limited to: loss in Plaintiffs' abilities to finance goods; loss of credit, loss of the abilities to purchase and benefit from credit; emotional anguish, frustration, and annoyance from being deterred from applying for credit; mental anguish, humiliation, anger, frustration, annoyance, and embarrassment as a result of the publication of false information; lost credit capacity and decreased credit scores; damage to reputation; mental anguish, emotional distress, frustration, humiliation, and annoyance as a result of being burdened with a false credit reporting history; lost opportunities to obtain credit in the form of an unspecified number of credit offers that Plaintiffs did not receive because of the false and derogatory information contained in Plaintiffs' credit reports; Plaintiffs' lowered credit score may have impacted the interest rates Plaintiffs have on current loans; Plaintiffs' lowered credit score may have impacted the interest rates Plaintiffs received during this ordeal; Plaintiffs' lowered credit score may have impacted the credit limits Plaintiffs have on existing accounts; Plaintiffs spent considerable time, effort, and expense attempting to force Defendant to comply with Defendant's statutory obligations, including but not limited to reviewing information online, telephone calls, emails, writing letters, sending letters, and attempting to decipher letters, reports, and other instruments provided by Defendant; loss of self-esteem because of Defendant's continued persistence in painting Plaintiffs in a false light both personally and financially; anxiety when considering seeking additional credit because Plaintiffs believe Plaintiffs will be forced to be subjected to the humiliation of having to explain the false and defamatory information; and the costs and time Plaintiffs have spent trying to repair Plaintiffs' credit in light of the damage done to it continuously by Defendant.

215. Trans Union's conduct, action, and inaction, were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 168ln. In the alternative, such conduct, action, and inaction were negligent, entitling the Plaintiffs to recover under 15 U.S.C. § 1681o.

216. The Plaintiffs are entitled to recover costs and attorney's fees from Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681o.

**TRANS UNION'S VIOLATION OF THE FCRA**
**(15 U.S.C. §1681i)**

217. The Plaintiffs reallege and incorporate all paragraphs above as if fully set out herein.

218. Trans Union violated 15 U.S.C. § 1681i on multiple occasions by failing to update or correct inaccurate information in the Plaintiffs' credit files after receiving actual notice of such inaccuracies, failing to conduct a lawful reinvestigation, failing to forward all relevant information to furnisher(s), failing to maintain reasonable procedures with which to filter and verify disputed information in the Plaintiffs' credit files, and relying upon verification from a source it has reason to know is unreliable.

219. As a result of Trans Union's conduct, action, and inaction, the Plaintiffs suffered damages, including, but not limited to: loss in Plaintiffs' abilities to finance goods; loss of credit, loss of the abilities to purchase and benefit from credit; emotional anguish, frustration, and annoyance from being deterred from applying for credit; mental anguish, humiliation, anger, frustration, annoyance, and embarrassment as a result of the publication of false information; lost credit capacity and decreased credit scores; damage to reputation; mental anguish, emotional distress, frustration, humiliation, and annoyance as a result of being burdened with a false credit

reporting history; lost opportunities to obtain credit in the form of an unspecified number of credit offers that Plaintiffs did not receive because of the false and derogatory information contained in Plaintiffs' credit reports; Plaintiffs' lowered credit score may have impacted the interest rates Plaintiffs have on current loans; Plaintiffs' lowered credit score may have impacted the interest rates Plaintiffs received during this ordeal; Plaintiffs' lowered credit scores may have impacted the credit limits Plaintiffs have on existing accounts; Plaintiffs spent considerable time, effort, and expense attempting to force Defendant to comply with Defendant's statutory obligations, including but not limited to reviewing information online, telephone calls, emails, writing letters, sending letters, and attempting to decipher letters, reports, and other instruments provided by Defendant; loss of self-esteem because of Defendant's continued persistence in painting Plaintiffs in a false light both personally and financially; anxiety when considering seeking additional credit because Plaintiffs believe Plaintiffs will be forced to be subjected to the humiliation of having to explain the false and defamatory information; and the costs and time Plaintiffs have spent trying to repair Plaintiffs' credit in light of the damage done to it continuously by Defendant.

220. Trans Union's conduct, action, and inaction, were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, such conduct, action, and inaction were negligent entitling the Plaintiffs to recover actual damages under 15 U.S.C. § 1681o.

221. The Plaintiffs are entitled to recover costs and attorney's fees from Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 1681o.

**ALLY'S VIOLATION OF THE FCRA**
**(15 U.S.C. §1681s-2(b))**

222. The Plaintiffs reallege and incorporate all paragraphs above as if fully set out

herein.

223. Furnisher Defendant violated 15 U.S.C. § 1681s-2(b) by failing to conduct reasonable investigations upon receiving notice of Plaintiffs' dispute(s) from one or more consumer reporting agencies, and/or failing to appropriately report the results of their investigations, and/or failing to appropriately modify the information.

224. Furnisher Defendant further violated 15 U.S.C. § 1681s-2(b) by failing to accurately respond to the CRA Defendants, failing to correctly report results of an accurate investigation to every other consumer reporting agency, and failing to permanently and lawfully correct its own internal records to prevent the re-reporting of inaccurate information to the Ally and Ally Joint Tradeline(s) within the consumer reporting agencies reports.

225. As a result of Furnisher Defendant's conduct, action, and inaction, the Plaintiffs suffered damages, including, but not limited to: loss in Plaintiffs' ability to finance goods; loss of credit, loss of the ability to purchase and benefit from credit; emotional anguish, frustration, and annoyance from being deterred from applying for credit; mental anguish, humiliation, anger, frustration, annoyance, and embarrassment as a result of the publication of false information; lost credit capacity and decreased credit scores; damage to reputation; mental anguish, emotional distress, frustration, humiliation, and annoyance as a result of being burdened with a false credit reporting history; lost opportunities to obtain credit in the form of an unspecified number of credit offers that Plaintiffs did not receive because of the false and derogatory information contained in Plaintiffs' credit reports; Plaintiffs' lowered credit score may have impacted the interest rates Plaintiffs have on current loans; Plaintiffs' lowered credit scores may have impacted the interest rates Plaintiffs received during this ordeal; Plaintiffs' lowered credit score may have impacted the credit limits Plaintiffs have on existing accounts; Plaintiffs spent considerable time, effort,

and expense attempting to force Defendant to comply with Defendant's statutory obligations, including but not limited to reviewing information online, telephone calls, emails, writing letters, sending letters, and attempting to decipher letters, reports, and other instruments provided by Defendant; loss of self-esteem because of Defendant's continued persistence in painting Plaintiffs in a false light both personally and financially; anxiety when considering seeking additional credit because Plaintiffs believe Plaintiffs will be forced to be subjected to the humiliation of having to explain the false and defamatory information; and the costs and time Plaintiffs have spent trying to repair Plaintiff's credit in light of the damage done to it continuously by Defendant.

226. Furnisher Defendant's conduct, action, and inaction, were willful, rendering it liable for actual or statutory, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent entitling the Plaintiffs to recover actual damages under 15 U.S.C. § 1681o.

## VI. VICARIOUS LIABILITY/RESPONDEAT SUPERIOR

227. Plaintiffs will be able to show, after reasonable discovery, that all actions at issue were taken by employees, agents, servants, or representatives, of any type, for Defendants, the principals, within the line and scope of such individuals' (or entities') express or implied authority, through employment, agency, or representation, which imputes liability to Defendants for all such actions under the doctrine of respondent superior and/or vicarious liability.

## VII. DAMAGES

228. Plaintiffs respectfully request that this Honorable Court instruct the jury, as the trier of facts, that in addition to actual or compensatory damages, punitive or exemplary damages may be awarded against the Defendants under the provisions of the FCRA and/or states' laws, including Michigan.

229. Plaintiffs respectfully request that this Honorable Court award Plaintiffs' litigation expenses and other costs of litigation and reasonable attorney's fees incurred in this litigation, in accordance with the provisions of the FCRA and/or other laws.

230. The above and foregoing actions, inactions, and fault of Defendants, as to each and every claim, have proximately caused a wide variety of damages to Plaintiffs.

231. Defendants performed perfunctory and essentially useless reinvestigations resulting in the verification of false reportings about the Plaintiffs and have been a substantial factor in causing credit denials and other damages.

232. Plaintiffs suffered a variety of damages, including economic and non-economic damages as prayed for herein.

233. Defendants have negligently and/or willfully violated various provisions of the FCRA and are thereby liable unto Plaintiffs.

234. Defendants are liable unto Plaintiffs for all actual, statutory, exemplary and punitive damages awarded in this case, as well as other demands and claims asserted herein including, but not limited to: out-of-pocket expenses; credit denials; loss in Plaintiffs' ability to finance goods; loss of credit, loss of the ability to purchase and benefit from credit; emotional anguish, frustration, and annoyance from being deterred from applying for credit; mental anguish, humiliation, anger, frustration, annoyance, and embarrassment as a result of the publication of false information; lost credit capacity and decreased credit scores; damage to reputation; mental anguish, emotional distress, frustration, humiliation, and annoyance as a result of being burdened with a false credit reporting history; lost opportunities to obtain credit in the form of an unspecified number of credit offers that Plaintiffs did not receive because of the false and derogatory information contained in Plaintiffs' credit reports; Plaintiffs' lowered credit scores may have

impacted the interest rates Plaintiffs have on current loans; Plaintiffs' lowered credit score may have impacted the interest rates Plaintiffs received during this ordeal; Plaintiffs' lowered credit score may have impacted the credit limits Plaintiffs have on existing accounts; Plaintiffs spent considerable time, effort, and expense attempting to force Defendants to comply with Defendants' statutory obligations, including but not limited to reviewing information online, telephone calls, emails, writing letters, sending letters, and attempting to decipher letters, reports, and other instruments provided by Defendants; loss of self-esteem because of Defendants' continued persistence in painting Plaintiffs in a false light both personally and financially; anxiety when considering seeking additional credit because Plaintiffs believes Plaintiffs will be forced to be subjected to the humiliation of having to explain the false and defamatory information; the costs and time Plaintiffs have spent trying to repair Plaintiffs' credit in light of the damage done to it continuously by Defendants; attorney's fees; court costs; and other assessments proper by law and any and all other applicable federal and state laws, together with legal interest thereon from date of judicial demand until paid.

**WHEREFORE PREMESIS CONSIDERED**, Plaintiffs pray that this Honorable Court:

A. Enter Judgment in favor of Plaintiffs and against Defendants Equifax Information Services LLC, Experian Information Solutions, Inc., Trans Union LLC, and Ally Financial Inc., jointly, severally, and in solido, for all reasonable damages sustained by Plaintiffs, including, but not limited to, actual damages, compensatory damages, out-of-pocket expenses, credit denials, costs and time of repairing Plaintiffs' credit, pain and suffering, embarrassment, inconvenience, lost economic opportunity, loss of incidental time, frustration, emotional distress, mental anguish, and fear of personal and financial safety and security for Defendants' violations of the FCRA, applicable state law, and common law;

B. Find that the appropriate circumstances exist for an award of punitive damages to Plaintiffs;

C. Award Plaintiffs pre-judgment and post-judgment interest, as allowed by law;

D. Order that CRA Defendants, Equifax Information Services LLC, Experian Information Solutions, Inc., and Trans Union LLC, and Furnisher Defendant, Ally Financial Inc., and Chase and Seterus, or successor in interest, work in conjunction, cooperatively, and/or individually to reinvestigate and correct the consumer report(s), credit report(s), data emanations, consumer histories, and credit histories of and concerning Plaintiffs and/or any of Plaintiffs' personal identifiers.

E. Grant such other and further relief, in law or equity, to which Plaintiffs might show Plaintiffs are justly entitled.

Date Filed: July 30, 2026

Respectfully submitted,

*/s/ Blake R. Bauer*

Blake R. Bauer
MN Bar Number 0396262
*(admitted pro hac vice to the USDC for the EDMI)*
Blake@fieldslaw.com
FIELDS LAW FIRM
9999 Wayzata Blvd.
Minnetonka, Minnesota 55305
(612) 383-1868 (telephone)
(612) 370-4256 (fax)

***Lead Counsel for Plaintiff***

**JURY DEMAND**

Plaintiffs hereby demand a trial by jury on all issues so triable.

July 30, 2026 | *\/s/ Blake R. Bauer*
Date | Blake R. Bauer